```
 1                   IN THE UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF ARKANSAS
 2                            CENTRAL DIVISION

 3    CRYSTAL MERRITT, on behalf of
      herself and all other Arkansas    No. 4:24CV00433-LPR
 4    Tay Payers,

 5                   Plaintiff,
                                        November 8, 2024
 6    v.                                Little Rock, Arkansas

 7
      WELLPATH, LLC; and
 8    THE ARKANSAS DEPARTMENT OF
      CORRECTIONS,
 9
                     Defendants.
10
                    PARTIAL TRANSCRIPT OF COURT'S RULING
11                BEFORE THE HONORABLE LEE P. RUDOFSKY,
                      UNITED STATES DISTRICT JUDGE,
12
      APPEARANCES:
13
      On Behalf of the Plaintiff:
14
              MR. LUCIEN R. GILLHAM
15               SUTTER & GILLHAM, PLLC
                 1501 North Pierce Street, Suite 105
16               Little Rock, Arkansas 72202

17    On Behalf of the Defendant Wellpath:

18            MR. ROBERT RYAN YOUNGER
                 QUATTLEBAUM, GROOMS & TULL, PLLC
19               111 Center Street, Suite 1900
                 Little Rock, Arkansas 72207
20
      On Behalf of the Defendant Ark. Department of Corrections:
21
              MR. RYAN C. HALE
22               ARKANSAS ATTORNEY GENERAL'S OFFICE
                 323 Center Street, Suite 200
23               Little Rock, Arkansas 72201

24
      Proceedings reported by machine stenography.  Transcript
25    prepared utilizing computer-aided transcription.
```

Lorie E. Kennedy, RMR, CRR, CRC, United States Court Reporter
lorie_kennedy@ared.uscourts.gov (501) 604-5165

1           (Partial Transcript - Court's Ruling.)
2                THE COURT:  Everybody be seated.
3      Okay.  I think that I can give you a ruling from the bench
4  today, which I have, after five years, decided when I can do
5  that, I should do that.  It gives the parties closure and the
6  ability to move forward one way or the other; rather than, quite
7  frankly, putting you in the queue and not getting to you for a
8  little while in terms of writing an opinion.
9           To be fair, I would actually like to write on this.  I
10 think it's an interesting issue.  But instead of this being
11 about me, I'm going to make it about you all, which it is, so
12 I'm going to give you an answer quickly.
13          I am going to remand this case.  I do not believe that I
14 have standing here.  I don't believe that the federal court has
15 standing here, and I think it would violate Article III.  Here,
16 I'm talking specifically about the illegal exaction claim.  It
17 would violate Article III for me to exercise federal
18 jurisdiction.
19          Let me just, I guess, quickly say as to the FOIA claim, I
20 think it's moot.  I think it's been conceded as moot, and I
21 certainly believe it's moot.  Quite frankly, either way, given
22 that I'm dismissing -- not dismissing, given that I'm remanding
23 the illegal exaction claim for lack of Article III jurisdiction,
24 the FOIA claim wouldn't remain here anyway because I don't think
25 it would meet any of the removal requirements or I would have

1  any jurisdiction over it.  I think even if I had discretion on
2  that, the right thing to do would be to remand it.  But let me
3  concentrate for a second on the illegal exaction claim.
4         I think here in federal court, this runs into the precise
5  problem discussed in Frothingham.  I certainly don't think it
6  meets the exception in Flast, certainly as Flast has been
7  interpreted and narrowed in recent years by cases like Hein;
8  that's not exclusively Hein, but other cases as well.  Daimler
9  and other cases actually make it clear that Frothingham is not
10 just sort of about federal taxpayer standing; those principles
11 also apply when you're dealing with taxpayer standing in a state
12 like the State of Arkansas.  Ultimately, I do not think that
13 there is a concrete and particularized injury here that would
14 satisfy what I will call the Frothingham-Flast-Hein test or line
15 of cases.
16        I understand, and I have looked at, what Defendants have
17 said in terms of Farrell v. Oliver and Ward v. Farrell.  No. 1,
18 I agree with the Plaintiffs that it's dicta; although it seems
19 to be, you know, considered dicta.  I agree that as a
20 practical -- as a technical matter, it is dicta.  No. 2, I guess
21 what I will say is -- when I say it's dicta, it's because in
22 both those cases, really, what is going on is an interpretation
23 of Article 16, Section 13 of the Arkansas constitution; and
24 then, you know, they're basically saying, those cases, well,
25 even if this wasn't the way we interpreted that article, there

1  is still this general theory of taxpayers being the equitable
2  owners of public funds.  But I will say, were I to truly
3  consider this language, I don't think it changes anything.  And
4  if it was, quite frankly, it would be an exception that
5  swallowed the rule because, even if this affected whether the
6  injury was concrete, I don't think it affected -- I don't think
7  it makes this injury particularized.
8      The Plaintiff here has the same ability and equal share to
9  sue that any other Plaintiff in Arkansas would, and I think that
10 is what causes the real significant problem under Frothingham
11 and then under cases like Hein.  The fact that Plaintiff doesn't
12 have any interest that is really, you know, special or
13 individualized to her, the interest she has here is the same
14 interest that any other Arkansas taxpayer would have.  And I
15 think if we opened up the federal courts to those kind of cases,
16 like the US Supreme Court has said in Hein and like the US
17 Supreme Court has said in Frothingham, that would essentially
18 signal the end of any real Article III boundaries.
19     Because I'm really relying on Frothingham and Daimler and
20 Hein and the tests in there, I'm not going to sort of go on and,
21 you know, get down to the granular level other than to repeat
22 what I said before:  I do not believe that the Plaintiff here
23 with the illegal exaction claim has any concrete or
24 particularized injury that she is suing over.  She is
25 essentially asking for disgorgement of money from -- some

1   unidentified amount of money, but in the tens of millions of
2   dollars from Wellpath back to either the Department of
3   Corrections or the State.
4        I don't think any of that is traceable either to a benefit
5   that the Plaintiff will get or avoid or a detriment the
6   Plaintiff will get or avoid.  It's certainly not traceable to
7   any kind of action that might or might not happen to her
8   specifically, whether we're talking about employment or, you
9   know, as a prisoner, which she never is, and there's no
10  suggestion she's going to be.  All of that put together tells me
11  that this is not the type of injury that gives rise -- I mean,
12  there is no injury I guess is my point, but this is not the type
13  of claim that gives rise to standing for a Plaintiff here in
14  federal court.
15       The last thing I will say is I don't think that this is
16  what Defendants were arguing, but I just want to note,
17  obviously, that in cases like Spokeo and Trans Union, the
18  Supreme Court has been pretty clear that neither congress nor a
19  state -- I'm adding the state part, but neither congress nor a
20  state can essentially manufacture standing through a statute.
21  There is either standing or there is not.  You know, a statutory
22  injury on its own is not enough.
23       Now, quite frankly, I want to be clear, that's not why I'm
24  rejecting the Farrell v. Oliver and Ward v. Farrell equitable
25  property argument because I don't think those two are exactly

1 the same thing.  I do think that the best argument Defendants
2 have is the equitable property argument.  But, again, I don't
3 think it ultimately changes anything, especially with respect to
4 the particularized, or unparticularized as the case may be,
5 nature of the injury.
6      So all of that being said, I don't think there is standing
7 here.  I don't think I can exercise jurisdiction; and given
8 that, as Defendants concede, the right thing to do is remand the
9 case to state court, clearly that claim but, also, in my view,
10 remand the FOIA claim.  No. 1, because I don't have jurisdiction
11 over it because it's moot.  And, No. 2, because in any event, it
12 wouldn't stay here on its own.  I don't think that would be the
13 right decision under a number of cases with respect to
14 supplemental jurisdiction.
15      So before I stop, does anybody have anything they would
16 like me to clarify, add, or explain more?  Plaintiff?
17           MR. GILLHAM:  No, sir.
18           THE COURT:  Defendants?
19           MR. HALE:  No, Your Honor.
20           MR. YOUNGER:  Your Honor, the only point of
21 clarification is whether the injunctive relief or lack thereof
22 played at all in the analysis.
23           THE COURT:  In the standing analysis, the injunctive
24 relief did not play a part.  No. 1, I don't think they are
25 actually seeking injunctive relief.  No. 2, were they seeking

1  injunctive relief and were I to put that into my analysis, it
2  doesn't change anything for me because there is no -- as far as
3  I can tell, there is no likely or very likely injury, again,
4  particularized to the Plaintiff that an injunction would fix or
5  change or respond to.  So I don't think that changes anything
6  with respect to the Plaintiff we have here and whether that
7  Plaintiff would have standing in this case.
8      But, again -- so that's on the illegal exaction part of it.
9  On the mootness part of it, I think the FOIA part of this is
10 moot regardless.
11          MR. YOUNGER:  Thank you, Your Honor.
12      (End of Partial Transcript.)

14                    REPORTER'S CERTIFICATE
15     I certify that the foregoing is a correct transcript from
   the record of proceedings in the above-entitled matter.
16
   /s/ Lorie E. Kennedy, RMR, CRR, CRC   Date: 11/08/2024
17     United States Court Reporter